

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| NONA CAMPBELL, et al., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: CV-03-S-2259-NE |
| | ) | |
| SALLIE-MAE, INC., ET AL., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Appellant Nona Campbell ("Campbell") appeals the final order entered by the
United States Bankruptcy Court for the Northern District of Alabama on June 24,
2003, concluding that her debt to Sallie Mae Servicing Corporation ("Sallie Mae")
was non-dischargeable under 11 U.S.C.A. § 523(a)(8).[1] Campbell also appeals the
bankruptcy court's decision denying her Motion for Judgment on the Pleadings.[2]

This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).
Upon consideration of the record, pleadings, and briefs of the parties, this court
concludes that Campbell's consolidated loan is an "education loan" for the purposes
of § 523(a)(8), that she falls within the meaning of "debtor" in the statute, and finally,

---

[1] *See* Bankr. doc. no. 53  (Notice of Appeal); Bankr. doc. no. 51 (Final Judgment).

[2] *See* doc. no. 2  (Brief of Appellant) at 1; Transcript of Proceedings (May 27, 2003)  at 16-
17.

that the loan is non-dischargeable under the statute.  Accordingly, the decision of the bankruptcy court is due to be affirmed.

## I. STANDARD OF REVIEW

A district court assumes the role of an appellate court when reviewing the decision of a bankruptcy court.  *See* 28 U.S.C. § 158(a).  A bankruptcy court's finding of fact must be upheld on appeal unless deemed clearly erroneous.  *See* Bankr. R. 8013; *In re Downtown Properties, Ltd.* 794 F.2d 647, 651 (11th Cir. 1986).  A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum,* 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948).  Determinations of law, on the other hand, are reviewed under a *de novo* standard of review.  *See In re Kalter*, 292 F.3d 1350, 1352 (11th Cir. 2002).

## II. FACTUAL BACKGROUND

This case was commenced on December 26, 2002, when plaintiff filed a "Complaint to Determine Dischargeability of Educational Loan" (Original Complaint) under 11 U.S.C. § 523(a)(8).[3]  The Original Complaint alleged several times that the loans at issue were educational loans, and further alleged that the

---

[3] *See* Bankr. doc. no. 1 (Original Complaint to Determine Dischargeability).

repayment of the consolidated loan would cause financial hardship on Campbell and her dependants.[4]  The consolidated loan at issue is a consolidation of multiple student loans obtained by Campbell's former spouse totaling $18,157, and one student loan obtained by Campbell herself in the amount of  $2,100.[5]

The bankruptcy court entered a scheduling order which provided that all causes of action must be added before March 14, 2003.[6]  Campbell filed a Motion for Leave to Amend the Complaint on or about March 6, 2003, and so amended the complaint to add several defendants, and to seek a declaration that the loans at issue were not educational loans within the meaning of § 523(a)(8).[7]  Campbell filed a motion on April 30, 2003, and for the first time asserted violations of the Family Education Rights to Privacy Act (FERPA).[8]  The bankruptcy court heard oral arguments and denied the motion, concluding that the FERPA issues were untimely raised and would be excluded from trial.[9]  Although Campbell does not appeal the decision of the

---

[4] *See id.*

[5] *See doc. no. 2* (Appellant's Brief) at 3.

[6] *See* Bankr. doc. no. 4 (Answer Filed By Defendant).

[7] *See* Bankr. doc. no. 5 (Motion by Plaintiff for Leave to Amend); Bankr. doc. no. 8 (Summons).

[8] The Bankruptcy docket sheet refers to the "Motion" as a motion for Summary Judgment. Plaintiff refers to the "Motion" as a Motion for Judgment on the Pleadings. *See* Bankr. doc. no. 16 (Motion for Summary Judgment).  The motion requests a judgment against Sallie Mae as a matter of law.

[9] *See* Bankr. doc. no. 32 (Notice of Entry of Order). Even if the bankruptcy court had allowed Campbell to amend her complaint to add a FERPA claim, such amendment would have been futile. FERPA provides no private right of action.  *See Gonzaga University v. Doe,* 536 U.S. 273, 276

bankruptcy court depriving her of the opportunity to file a late amendment to her complaint, she nonetheless appeals from this decision as part of the final order by attempting to raise the substance of her FERPA claims for a decision on the merits.[10]

Campbell filed a Motion for Partial Summary Judgment on June 11, 2003, arguing that her consolidated loan debt—which primarily consists of her former spouse's student loan debts—was dischargeable because she did not receive the educational benefit from the loan.[11]  The bankruptcy court entered an order on June 24, 2003, denying Plaintiff's Motion for Partial Summary Judgment.[12]  The only remaining issue for trial was whether the loan at issue could be discharged as a result

---

(2002).  In *Gonzaga,* the Supreme Court went to special effort to resolve any ambiguity as to one's ability to sue for FERPA violations under 42 U.S.C. §1983.  *Id.* at 278.  The Court determined that "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for private suit, whether under § 1983 or under an implied right of action." *Id.* at 286.  The Court further determined that FERPA's nondisclosure provisions fail to confer enforceable rights because: 1) The drafters did not use individually focused terms; 2) "the provisions further speak only in terms of institutional policy and practice, not individual instances of disclosure; 3) "Congress expressly authorized the Secretary of State to *'deal with violations'* of the Act;" 4) Congress added a provision requiring that "none of the functions of the Secretary under [FERPA] be carried out in any of the regional office" as to avoid different interpretations of the Act. Accordingly, the Court concluded that "FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions.  They therefore create no rights enforceable under § 1983." *Id.* at 287- 290.

[10]  Shortly after her motion was denied by the court, Campbell attempted to file an interlocutory appeal from this order. This court denied the Motion for Leave to Appeal on July 1, 2003. *See* Bankr. doc. no. 52.

[11] *See* Bankr. doc. no. 37 (Motion for Summary Partial Summary Judgment).

[12] *See* Bankr. doc. no. 50 (Order Denying Motion for Partial Summary Judgment).

of undue hardship.[13]  After trial, the bankruptcy court concluded that the amount of the loan at issue was non-dischargeable pursuant to 11 U.S.C. § 523(a)(8).[14]

## III. DISCUSSION

The issue before the court is whether the bankruptcy court erred in determining that Campbell's consolidated loan is non-dischargeable.

**A.    Dischargeability of Student Loan under 11 U.S.C. § 523(a)(8).**

**1.    Status of Student Loans upon Consolidation.**

Section 11 U.S.C. § 523 provides in relevant part:

(a) A discharge under § 727... of this title does not discharge an *individual* debtor from *any* debt –

. . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. 523(a)(8) (emphasis supplied).

Campbell argues that the consolidation of her student loan with her former

_____

[13] *See* Bankr. doc. no. 42 (Issues to be Tried).

[14] *See* Bankr. doc. no. 51 (Final Order).  In the final order, the bankruptcy court stated that the order "is in conformity with the findings of fact and conclusions of law dictated into the record" on June 24, 2003. *Id.*  Though neither party submitted a transcript of the trial, it is obvious from the bankruptcy court's conclusion that the court found no undue hardship consistent with the Proposed Findings of Fact and Conclusion of Law submitted by Sallie Mae. *See* doc. no. 43 (Proposed Findings of Facts and Conclusions of Law).

husband's student loans causes the consolidated loan to lose its status as an "educational loan" within the meaning of § 523(a)(8).[15]   Persuasive authority, however, construes a consolidated student loan as a *second* "educational loan."   *See Hiatt v. Indiana State Student Assistance Commission*, 36 F.3d 21, 24 (7th Cir.1994) (noting that a consolidated student loan is a second government guaranteed student loan); *Powers v. Southwest Student Services Corporation (In re Powers),* 235 B.R. 894 (Bankr. W.D. Mo. 1999) ("[t]here is no dispute that the consolidation loan . . . is an educational loan that falls within the coverage of [11 U.S.C. § 523(a)(8)]"); *Cobb v. United Student Aid Funds, Inc. (In re Cobb),* 196 B.R. 34, 37 (Bankr. E.D. Va. 1996) (interpreting a consolidation loan as "in essence a second government guaranteed student loan").

Without any legal authority, Campbell further maintains that, in order for a loan to be deemed an "educational loan," the money had to be used for an educational purpose.[16]   She claims that her current consolidated loan "was not used for educational purposes, but was used to pay off pre-existing, separate and unrelated educational loans."[17]   This argument was  soundly rejected in *In re Cobb,* 196 B.R. at 38, where petitioner made a similar argument.   Petitioner claimed that her

---

[15] Bankr. doc. no. 16 (Motion) at 17-18; *see also* Doc. no 2 (Appellant Brief) at 39.

[16] *Id. See also* doc. no. 2  (Appellant's Brief), at 39.

[17] *Id. See also* doc. no. 2  (Appellant's Brief), at 40.

consolidated loan was dischargeable because she did not return to school after obtaining the educational loan; and, therefore, was no longer using the loan for educational purposes. *Id.*   The court held that this argument "misse[d] the mark" because the original loan was admittedly for "educational purposes;" and accordingly, "the essential purpose of the consolidation was the repayment . . . of debt incurred to pay the costs of higher education." *Id.*

Campbell does not dispute that the original loans were educational loans obtained to pay the costs of education.[18] She and her ex-husband both took out student loans to pay for their education, then later consolidated the loans, which allowed for a single loan payment to be made on the multiple student loans.[19] Accordingly, Campbell's consolidated loan, which was obtained to repay "educational loans," is considered a "second" government guaranteed "educational loan" under §523(a)(8),  and is non-dischargeable under the statute.

### 2.   Dischargeability of Student Loan When Plaintiff Did Not Obtain Loan or Receive Educational Benefit.

Campbell argues that her consolidated loan should not be excepted from discharge because *she* did not receive the educational benefit of the loan.[20]   Section

---

[18] *See* doc. no. 2 (Appellant's Brief), at 3.

[19] *Id.*

[20] *See* Bankr. doc. no. 37 (Motion for Partial Summary Judgment).

-7-

523(a)(8) "does not discharge an *individual debtor* from *any debt*" for an educational loan "insured or guaranteed by a government unit" unless exception from discharge would cause "undue hardship." *See* 11 U.S.C.A. 523(a)(8)  (emphasis supplied). Section 523(a)(8) draws no distinction for borrowers, like Campbell, who never received the educational benefit from a large part of the consolidated loan.

A minority of courts have found the text of §523(a)(8) ambiguous, and have further found reason to discharge student loans for *non-student* obligors by examining its legislative history.  *See e.g., Bawden v. First Southern Fed. Savings and Loan* (*In Re Bawden*), 55 B.R. 461 (Bankr. M.D. Ala. 1985) ("The legislative history of § 523(a)(8) and the policy of the Bankruptcy Code lead the court to conclude that a guaranteed student loan is an educational loan only as to a student borrower");[21] *Boylen v. First National Bank of Akron* (*In re Boylen)*, 29 B.R. 924 (Bankr. N.D. Ohio. 1983) (finding legislative history did not indicate intent to except non-student co-makers of the education loans from discharge, and that legislative history focused on preventing abuse of the student loan system specifically by students seeking a fresh start).  This court does not agree.

---

[21] *In Re Bawden* has been rejected by numerous courts  including the Middle District of Alabama. *See In re Norris*, 239 B.R. 247 (Bankr. M.D. Ala. 1999); *see also In Re Pelkowski,* 990 F.2d. 737 (3rd Cir. 1993); *In re Lawson*, 256 B.R. 512 (Bankr. M.D. Fla. 2000); *In re Karben*, 201 B.R. 681 (Bankr. S.D. N.Y. 1996) and *Matter of Selmonosky*, 93 B.R. 785 (Bankr. N.D. Ga. 1988); *In Re Salter*, 207 B.R. 272 (Bankr. M.D. Fla. 1997).

"The court should construe [a] statute according to the ordinary and plain meaning of the statute's words 'because we assume that Congress uses words in a statute as they are commonly understood.'" *In re Norris,* 239 B.R. 247, 250 (M.D. Ala. 1999) (quoting *United States v. Veal,* 153 F.3d 1233, 1245 (11th Cir. 1998)). "The court should not review the statute's legislative history unless the statute is inescapably ambiguous." *Veal,* 153 F.3d at 1245.   Thus, "the plain language of the statute [is deemed] to be conclusive as clearly expressing legislative intent, unless the resulting application would be a 'absurd' or 'internal inconsistencies' must be resolved." *United States v. Turkette*, 452 U.S. 576, 580 (1981).

A majority of courts use the plain meaning of the statute to except all student loans from discharge without regard to student status of the borrower or how the money was used.  *See, e.g., Salter v. Educational Resources Inst., Inc. (In re Salter),* 207 B.R. 272, 275 (Bankr. M.D. Fla. 1997) (denying discharge of the student loan in parents' name because "[the] [c]ourt is satisfied that the proper focus should be on the kind of debt involved, rather than how the money was spent, or who was the borrower"); *Barth v. Wisconsin Higher Education Corp.* (*Matter of Barth*), 86 B.R. 146, 148 (Bankr. W.D. Wis. 1988) (denying discharge of student loan even though debtor had not received educational benefits of the loan because "the focus of section 523(a)(8) is on the nature and character of the loan, specifically whether it was an

-9-

educational loan").

The language used in the text — "an *individual* debtor from *any* debt" — indicates that no distinction was intended between student debtors and other borrowers. *See In re Pelkowski*, 990 F.2d at 737, 741 (3rd Cir. 1993) ("We find no support in the statutory language for any distinction based on the status of the borrower as student or beneficiary of the education . . . Section 523(a)(8) does not refer to a 'student debtor' but applies to limit discharge of any 'individual debtor' from 'any debt' for a covered educational loan ."); *In Re Norris,* 239 B.R. 247 at 251 ("The statutory language draws no distinction between obligors on an educational loan. The plain meaning of the statute strongly suggests that educational loans are non-dischargeable whether the named borrower is a student or not."); *In re Hammarstrom*, 95 B.R. 160, 162 (Bankr. N.D. Cal. 1989) (concluding that covered student loans are non-dischargeable "irrespective of whether the student or some other person is the obligor under the promissory note" because the statute's plain meaning provided no exceptions to the general rule of non-dischargeability).

The court does not find any ambiguity in § 523(a)(8) which needs to be resolved through legislative history. A plain reading of the statute makes no specific mention of *student* borrowers, nor does it indicate an intention to limit the reach of the statute to student borrowers who *themselves* gained the benefit of the student loan.

In fact, the words of the text appear to be carefully chosen to create the opposite effect.  The drafters placed emphasis on the applicable *types of debt* rather than the applicable *types of debtors.*  Accordingly, since Campbell and her former spouse's loans were originally acquired for the purpose of obtaining an education, it is irrelevant that *she* did not receive educational benefit from the large part of the ultimately consolidated loan.

Furthermore, the Supreme Court has established its "unwillingness to soften the import of the Congress' chosen words," even when the Court believes that it might produce a harsh result. *Lamie v. United States Trustee,* 540 U.S. 526, 538 (2004).  Even though forcing Campbell to repay the educational loans of her former spouse might be harsh, and even "run counter to the general 'fresh start[,]' [t]he exceptions to discharge exist because Congress decided that other public policies outweighed the debtor's need for a fresh start." *Matter of Barth,* 86 B.R. at 149.  Two purposes behind § 523(a)(8) are furthered by the plain meaning of the text: "(1) preventing undeserving debtors from abusing educational loan programs by declaring bankruptcy immediately after graduating; and (2) preserving the financial integrity of the loan system."  *Hamblin v. Educational Credit Management Corporation (In re Hamblin)*, 277 B.R. 676, 682 (Bankr. S.D. Miss. 2002) (citing *In re Murphy,* 282 F.3d 868, 873) (5th Cir. 2002); *see also In re Dull,* 144 B.R. 370, 372 (Bankr. N.D.

Ohio. 1992) ("[A] major purpose in enacting the section was to preserve financial integrity of educational loan programs by limiting circumstances in which such obligations can be discharged in bankruptcy.").

Since Campbell falls within the statute's meaning of "debtor," her loan is non-dischargeable unless she meets the "undue hardship" requirements for exception under §523(a)(8).  Campbell does not appeal from bankruptcy courts finding of no undue hardship.  Accordingly, the findings regarding undue hardship need not be reviewed by this court.[22]

## B.    Other Issues for Appeal

Campbell's remaining issues on appeal were never considered by the bankruptcy court below.[23]   Accordingly, this court declines to entertain these issues

---

[22] *See* Bankr. doc. no 55 (Statement of Issues); Bankr. doc. no. 58 (Amended Statement of Issues).

[23] Campbell raises several issues in her brief:

A.    Standard of Review and Jurisdictional Matters
    1.    Whether the Bankruptcy Court committed error in not abstaining from ruling to sever the Family Education Rights to Privacy Act (FERPA) issues on the day it did rather than treat the matter as a preliminary hearing on the issues raised under the FERPA?
        a)    Whether the Bankruptcy Court had "core" or "related to" jurisdiction to rule on the claims raised under FERPA?
        b)    Whether the Debtor/Appellant's motion for leave to appeal the Bankruptcy Court's interlocutory order was an informal Motion to Withdraw District Court Reference from the United States Bankruptcy Court for the Northern District of Alabama, Northern Division (Bankruptcy Court)?
        c)    Whether Debtor/Appellant's motion for leave to appeal the Bankruptcy Court's interlocutory order is an objection

for the first time on appeal. *See Telfair v First Union Mortgage Corporation* 216 F.3d 1333, 1337 (11th Cir. 2000) (citing *In Re Daikin Miami Overseas, Inc.,* 868 F.2d 1201, 1206 (11th Cir. 1989) ("Appellate courts will generally decline to consider an issue raised for the first time on appeal")).

## IV. CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED. The clerk is directed to close this file.

DONE this 10th day of August, 2005.

_____

United States District Judge

---

compelling the District Court review the matter *de novo*?

    B.    Family Education Right to Privacy Act Claim (FERPA)

        2.    Whether Consolidating Institution's failure to separate and segregate educational and financial records of a "spousal consolidation loan" violates the FERPA?

    C.    Constitutional Issues:

        3.    Whether it is a violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment of the United States Constitution in excluding an entire Class of Economic Individuals from the privacy protections afforded all other individuals under the FERPA?

*See* doc. no. 2 (Appellant's Brief), at iv-v. The issues discussed in sections A through C of the Appellant's Brief were neither timely raised nor considered by the bankruptcy court.